The next case on the calendar is Ross Dress For Less. Good morning. May it please the Court. My name is Greg Call. I'm here on behalf of Ross Storrs, the appellant, and I'd like to reserve five minutes for rebuttal. That's fine. I want to start with what I think is a simple issue, which is the issue of the jury trial. Under Federal Rule of Civil Procedure 38 and Federal Rule of Civil Procedure 39, given that Makarios had a jury trial right and they demanded the jury, the only way that right can disappear and there wouldn't be a jury trial is if the parties stipulate it or consent it. Ross did not do that. Thus, this judgment should be vacated and the case should be remanded. There are two issues that will determine the scope of what happens in the district court. We think perhaps — But let me ask you this. That seems to be a tension between the Federal rules and what actually was agreed to by the jury trial, correct? And I think that's the situation which we have to resolve. I had a case recently which was pretty compelling back in Brooklyn, far away from here, where after a three-week trial, the plaintiff decided to waive the jury trial. And clearly, under the rules, the defendant had to decide whether to agree or not. And the defendant agreed, cost him $6 million to make that decision, as it turned out. So I understand the rule. Now, how do you square that with the fact that here you had the actual waive that the parties agreed to? Because there's a distinction between the right that Ross has to a jury trial versus the right that Macarios has to a jury trial. And we believe Ross had a right to a jury trial under the provision in the lease, because when you understand where that provision is in the lease, which is about summary proceedings, that when they talk about proceedings, they're talking about proceedings large to include whatever counterclaims might be brought, because it doesn't defeat the right to go to the summary proceedings. Otherwise, the tenant files something that requires a jury trial. I'm having a hard time squaring that with the language of the waiver, though. It says, I quote, and this is what, section 12, 13.04, excuse me, the tenant waives all right to trial by jury in any summary or other judicial proceedings. Is your position that that only, that waiver only applies if it's the landlord who initiated the proceedings? Yes, it only applies. So it's just a one-way waiver? It's a one-way waiver, and it's to protect the landlord's right to proceed without interference of a jury trial to get there quickly. But that doesn't matter. What matters is what Rule 38 and 39 say, which what they say is that once a party who has a... Why? Why? Go back to the threshold, if you would. I mean, Judge Block's point is we understand what the rules say, and I'm trying to help you conserve time. We really do appreciate what the rules have to say, but then there's this agreement between the parties. Yeah. And you think the agreement doesn't matter? The agreement doesn't matter because the basis for the jury trial right here under the rules is that Macarius demanded the jury trial. Macarius demanded the jury trial. There is nothing in the agreement that restricts Macarius with respect to a jury trial. And once Macarius has demanded the jury trial under Rules 38 and 39, it can only go away if the parties stipulate or if Ross consented. So at this point, if I can tell you, you've briefed this at length, and we've read those briefs carefully. If you have more to add on this point, we're all ears, but there are a lot of issues in this case. There's a lot of issues. Yeah. Yes. Yeah. I'd like to go next, Your Honor, to the collateral estoppel issue. Okay. And here's the point on collateral estoppel. To understand what happened in the FED case. In the FED case... Counsel, I don't want to speak for my two colleagues, but I don't think you need to spend a lot of time on collateral estoppel. The issue that I'd like you to address, which I think is kind of the elephant in the room here, is this issue of whether or not the damages should have been measured by what Macarios estimated it would cost to repair versus diminution in value when those repairs were not made. And as I understand the record, your client offered no evidence at either of the two trials as to what a diminution in value might be here. There were no appraisals or anything of that nature. So why is it that we shouldn't find that after Macarios entered evidence of estimated cost to repair, that the burden then shifted to Ross if it intended to argue diminution in value, some kind of appraisal, comparative appraisal evidence to permit the district court to do that? Yeah. There's basically two points. The first point is that there was evidence with respect to value that was offered. The evidence with respect to value that was offered has to do with the fact that what Macarios was seeking to do was to get the repair cost to turn this into half of a 1950s department store. So that's your characterization. The evidence was, is it Anderson's testimony? It would be Anderson's testimony. It's the fact that— Is there anything else other than Anderson's testimony? Yes, there's other things. Okay. There's the fact that Macarios never undertook the work. There's the fact that Mortenson, the only other party that expressed an interest in the building, intended to tear it down. And then there's Brandon Anderson's testimony with respect to, you know, and also Greg Close's testimony with respect to the fact that a building of this age, what's going to happen with respect to a building of this age, it needs to be reimagined. It needs to be dealt with in a different way. It wasn't going to go back to a 1950s department store. And what Mr. Anderson did is what anybody would have done, which is they would rip the insides out and start all over again. So is your argument from that that the district court should have inferred that no reasonable landlord would actually make those repairs? They would not make those repairs, absolutely. And the other— But did you ever call a witness who said that directly, that these estimates to repair may very well be what it's going to cost, but no reasonable landlord would expend that kind of money because the end result would be it would cost more than what the increased value to the landlord would be? Yeah, but the evidence is with respect to what was actually done and that the thing to do, as the judge agreed, the thing to do that gets the most value from the building is to leave it conjoined and to reimagine it so that the expenditures to do those things is necessarily a waste. To me, that's better evidence. The difficulty had—just, you know this—but the difficulty had is the lease terminated in September of 2016, and so he had to look at the obligations as of that time, right? Why is he wrong to do that? Because—let me just—let me go back to another rule that we cite. We cite a rule, and it's the Dennis case, the Lipton case, the Sachs case, and a litany of other cases. They have the following fact pattern. Those cases have the fact pattern that the landlord never did the work and the building was sold. In each one of those— Wait a minute. I've read all those cases, and I think your point is well taken, and this is a complicated case, so if you could be patient with me to help me out. I think we appreciate your argument about this work never being performed. I think the district court appreciated it, and he said it doesn't mean, just because you've got this principle about economic waste, that none of these repairs would have added value. It doesn't mean that Ross could leave the building in a state of disrepair, that there would be no diminution in the sales—you know, the market value of the building, right? Yeah, yeah, but here's— I appreciate—forgive me—I appreciate Mr. Anderson's testimony, and I read it carefully about what you said, which is this isn't what a reasonable purchaser would do, and it's not what was done. That was your real point. It's not what really happened, right? But some of these repairs aren't as to the interior that seem to fall into that category, sir. So, you know, the window repair, the roof repair, the terracotta repair, what about those things that don't seem to be dependent upon gutting the building? Okay, so what Mr. Anderson said about the windows is that you would rip them out to make it a modern building, and that's exactly what was done. And also Mr. Bailey, the architect who supported the cost, said that. With respect to the terracotta, what Mr. Anderson testified to was that he didn't do it because it didn't need to be done. So what do we do about the fact that—for me, you'd be in a much stronger—your client—would it be in a much stronger position, right, if it hadn't been that there were these two sales of the building? I mean, how can we tell that the market value wasn't diminished? Because it wasn't a straight across. There's about a $750,000 swing in the sales prices. Yeah, yeah. So let me—first of all, just—I want to get to my second point, was there's the factual issues, and there's the way the rules should work. What the Fisher case that the judge cited— Are you going to answer my question? What? Are you going to answer my question? Yeah, yeah, yeah. I'll be waiting. Yeah, yeah. I'm sorry, Your Honor. That's okay. Could you repeat your question again for me, just so I have it in mind? Yes. It seems to me that your arguments are about Mr. Anderson saying that a reasonable purchaser wouldn't make these repairs or improvements, which is why a lessor wouldn't apply to some of the items on this list, but not all of them. And the district court was very mindful of your argument, but he said it doesn't mean that Ross could, just because there's this economic waste principle, that Ross could walk away and leave all of these repairs unrepaired, and I'm waiting for an answer to that. Okay. So first of all, Mortenson, who was the first buyer, was going to tear it down. So all the repairs to the building are meaningless in the concept of it being torn down. But he ultimately determined— And you think didn't affect the market value, because how do we know that? That's my question. Well, I mean, it's just logic. If you're tearing down the building, the state of the roof or the state of the terracotta or anything that is about the building is not of any value to you because you're going to tear it down. You keep making this argument, but if you could just engage with Judge Tomlin's question, right, because we're trying to figure out if it's really the case—the district court didn't think it was really the case—that the failure to make these repairs didn't affect the value. For one thing, he said, by not making them and not splitting the buildings in two, then the world of potential buyers was reduced to one. What is your response to that, please? Yeah. And at that point, it is the burden of Beccarios to have come with the evidence that would have shown what the sales price would have been. Because here is the way the rule, in our view, works based on the Montero case as well as even the Washington State case, the Fisher case. The Fisher case doesn't talk about a burden of proof with respect to damages. If you look at that first paragraph, it talks about a burden of production. And we provided the burden of production. We provided the evidence that called into question factually whether or not the repair costs were, you know, consistent with the value that they would bring. At that point, the burden of proof— We agreed to provide two appraisals, one based on an appraisal of the building as is versus a hypothetical appraisal of what the building would be worth if the repairs were made. But we believed that we had the best information, which was what an actual buyer would do. But the district court basically said it wouldn't have been that burdensome, given the amount of money involved here. If Ross had simply offered that kind of evidence, and it didn't. The district court also said that the highest and best use for the building was to leave it conjoined and have it reimagined, as Mr. Anderson did. It had a common owner, and in September 2016, it didn't. I agree with you. It's not that you had no evidence for this, like in the Montero case. You had evidence, certainly in the form of Mr. Anderson, and I looked to see what other But I'm not sure that it's error. I think what you really have to be arguing today is that the district court was required to believe and credit Mr. Anderson's testimony, as opposed to saying, I don't find it persuasive. Why was that? He did find it persuasive, because ultimately he agreed with Mr. Anderson that the highest and best use was what Mr. Anderson did. If it was conjoined. But as at the end of the lease, it wasn't. And the only evidence that they presented with respect to there being any value with respect to the repairs was testimony by Mr. Calamaris. But Mr. Calamaris, he didn't identify a buyer. You don't have a value, and the value is supposed to be an objective standard. You don't have a value for something simply because the owner of the building says it would be valuable. You have to have a buyer. The only two buyers, one was Mortenson, who wanted to tear it down, and the other was Anderson, who wanted to leave it conjoined and rip out the insides. Those are the only two buyers you have. And Mr. Calamaris simply assumes a buyer. And, you know, he shouldn't be able to just assume a buyer and then attest value with respect to what that hypothetical buyer would do. He needed to present evidence. Because ultimately, given the evidence we presented, the ultimate issue on damages is up to him. I mean, he's got the burden to prove the damages. That's what Montero and the legal organists said. I'm not sure I'm following that argument. It seems to me that at some point, once the landlord says, this is what I am told it will cost to make the repairs, and the contract says that on a termination of the lease, your client has to do the following, you've got to offer something more if you're going to rely on a diminution in value as the best measure of damages. Well, again, our view is what we offered was that no reasonable landlord would do the work. Can we back up to Judge Tolman's premise? Because he's got a couple baked in there. I think I agree with him. But I just want to, it may be instructive. Ross didn't come forward in a, sometimes it's a bidding war. And there are other estimates of what the repairs could cost. And we don't have that. That wasn't your strategy. Your client didn't adopt that strategy. We did not adopt that strategy. OK. And let me make sure that I'm not overstating. As to these other repairs that I've mentioned, the window repair, the terra cotta, are you contesting that these things were not left as is or falling within the reasonable wear and tear accepted category? No, we believe that they do. We believe that those issues are taken out of the case by the application of collateral estoppel issue preclusion. OK, if you don't win on that, then what? Then that there's no value to doing those repairs, because any person that comes into ownership of that building is going to do one of two things. They're either going to tear it down, and the fact that you fixed the exterior terra cotta is going to have been of no value to somebody. But you say that. You say that. It's conclusory from what I hear you say, that it was going to be torn down. But what evidence do you have of that? Well, that's what Mortensen intended to do. And then Anderson offered the alternative, which is all the testimony was that the building would be reimagined. And what you would come and do is you would gut the interior and rebuild it into something different than a 1950s department store. What's happened in the last six years? The buildings still stand, right? They're just down the street here. Yeah, and what's happened was the entire interior was gutted, and the building was reimagined as a retail. There's one medical on the second floor, an office on the upper floors. But nothing, everything was taken out. So was any of the work done? Did they replace the electrical wiring or the plumbing or fix some of the windows? Well, those things were replaced, but they were replaced in different ways because they needed to be put in for the use that was particular to what was being done there. It wasn't set up for a 1950s department store. In other words, the snapshot you're taking, sir, is not September of 2016, and therein lies the rub. So the district court was in this very weird, if I could use that word, position, right? He's looking at the end of the lease obligations. That was September of 2016. And then what had happened, if we flash forward, is what you're describing. Yeah, and that was what would happen to anybody, and that was the testimony of a number of witnesses. Anybody that came into possession would ultimately have to do that. You made that point several times. Could I get you to answer my other question that I... We keep tripping over each other. Forgive me, but you've explained that on this damages front, getting back to the leaked-in premise of Judge Tallman's questions. You didn't offer competing evidence of what it would cost to complete the repairs. You've explained that. The other thing that could have been done is the district court made findings about how the building wasn't left in as good as, right? The plumbing wasn't flushing, and the pipes were corroding and stuff. And I don't think there's competing evidence, but truly it's an imitation to you, if I've missed it, that called those findings into question. If I'm correct, what you did instead is to say no reasonable landlord would undertake these repairs. Yeah. As to some of those things, again, there was definitely evidence that was different than that. I mean, the ones that I can call out right now was the condition of the exterior terracotta that had been repaired by Ross, or work had been done by Ross. Okay. And Mr. Anderson testified that it was in good condition, didn't need to be replaced. The roof, Ross did work. It believed it had fixed the roof. But the court made a finding that that roof hadn't been satisfactory. The court made a finding to that effect, yeah. Okay. All right. So I think that we're on the same page now, and I appreciate your patience with me, that your argument was to the contrary. You're down to less than two minutes. Would you like to reserve some time? I would like to reserve time, yes. Thank you. Sir, when you come back, we'll put two minutes on the clock. We took a lot of your time with our questions. May it please the Court, Counsel, Molly Honore from Makarios, Oregon, LLC. So I want to track what we've been talking about on the economic waste doctrine, and just start there. Did the court apply it? Did the court apply the economic ... Makarios' position is that there's four issues on appeal that concern the economic waste doctrine. So my question is a simple one, and it's a yes or a no. Yes, the court applied the economic waste doctrine. We think the court applied it incorrectly as to those three items of damages that it disallowed. The court has a sentence, full stop, unqualified, that Ross is not entitled to the benefit of the economic loss doctrine, right? Correct. And then is the basis for your statement that the court applied it footnote four? Yes, and I think the court goes through and looks at, do I have the circumstances where I can apply it? And the district court rejected Makarios' position that it should not apply in this case, because the court said, yes, I can apply the economic waste doctrine. But it did not ultimately apply it to disallow Makarios' damages as to the three items that it disallowed. It said that Makarios didn't meet his burden of proof. Correct. If we're talking about the same ... It would help me ... Correct. So ... If you would ... Sure. Are we talking about the freight elevator, the third elevator, the plumbing, and the air conditioning? Correct. Yep. Okay, so that's footnote four. Correct. And he says there, the district court there said Makarios didn't meet Makarios' burden of proof. Correct. Why is that wrong? So, it goes back to Montara. All right, can I ask two questions? Sorry. Sure. Yes. Why is that wrong? And also, is that where you think he applied the economic waste doctrine incorrectly? Yeah. Well, we think he applied the burden shifting in Montara incorrectly. Okay. My question was different, though. Yes. We're going to talk a lot about footnote four, I expect, but do you think he applied the economic waste doctrine? I think he applied the economic waste doctrine incorrectly in the concept that it should never have been available as a defense in this case. He said they don't get the benefit of it. He has a sentence, that's where I started. Correct. Saying that Ross does not get the benefit of it. Right. And I think he did correctly determine that there was no diminution of value evidence in the record. Therefore, Ross could not get the benefit of the economic waste doctrine, which requires that second step. Where do you think he applied the economic waste doctrine? I don't... I think he... I think the trick is in this additional element applied to the Montara analysis, this additional step. Where? Counsel, where in the analysis? That's footnote four. Okay, that's what I was trying to get you to. Yeah, that's footnote four. So, we just spent three minutes on that. But I think... But it's important to define the universe of where you think the areas on the economic waste doctrine and the burden shifting, it's in footnote four. Correct. That's the three items that we're talking about. Correct. Okay. Now I'm all ears. Okay. So, these four items, issues on appeal that concern the economic waste doctrine, which is Ross' issues on appeal and then Makarios' issues on appeal concerning whether it's available to an intentional breacher and whether we should disallow damages based on this prudent lesser standard. This is all... Can all be resolved by just applying Montara correctly. And Montara is simple. It says cost of repair is sufficient. And then the court of appeals in Montara said it is the defendant's burden of proof to prove diminution value. And the economic waste standard requires that second step of saying that the cost of repair must be grossly disproportionate to diminution value. We know that, but you've just agreed that he didn't apply. And your team's view is that the district court correctly decided that Ross is not entitled to benefit of the economic waste doctrine. Correct. So, why do you think that he erred in footnote four, please? Because nowhere in that Montara analysis does it impose an additional burden on the landlord to prove that the cost of repair would be undertaken by the landlord in some action where the landlord is doing the work itself. Okay. So, I think that the language in footnote four sort of suggests that economic waste doctrine may be applied there, or it's a little bit confusing. I'm with you. But it's clear that as counter plaintiff, your client had the initial burden to show that the contract had been breached and that you were entitled to recovery for these three things. Correct. Right. And so, you put in evidence, and the district court agreed with you, I think, about the condition of the elevator and the air conditioning and the plumbing, but these totals were large and I think undifferentiated. So, I don't think the district court would have had any evidence to say this third freight elevator wasn't needed, and it didn't diminish the value of the building because he had evidence, certainly, that another freight elevator wasn't needed. But he didn't have any evidence about what it would have taken to remove the inoperable freight elevator. He just had this lump sum. So, it seems to me that your argument has to be that once you put that in there, freight elevator broken 450 to replace it, that he was obligated to award that even if he thought it was not reasonable? Correct. Because this is a contract for work, so the landlord is entitled to damages for the cost of that work. Even if it's unreasonable. Even if he gets an estimate that's stratospheric. Is that right? It's a contract. So, a party... I'm sure he's looking for a yes or a no. And I think it's not the burden to prove that the bargain for benefits in the contract are reasonable on some market analysis. That's not my question. I'm trying to figure out what you think your client's burden was to come forward to prove his prima facie case. The burden was to prove the cost of the work required by the lease. Even if the judge thought that that number, that $450,000 number, was unreasonable? That was not his... I don't think that was his conclusion. His conclusion wasn't that the cost to do the work was an unreasonable amount. It was that the landlord wouldn't undertake it. No prudent landlord would undertake it, and I take that to mean because it was such a big price tag. Do you think I have misunderstood his reasoning? It's difficult because there isn't additional reasoning. So my take on it, looking at it, is that the language here in that footnote focuses on what a prudent landlord would do. He focuses then on this configuration of where the air conditioning would be. It wasn't to restore the building to a 1950s department store. It was just to put air conditioning back in the third floor. Well, yes, but it's not that easy, right? Between us, I wonder how many times we've read footnote four. I imagine a lot. But he had the problem, right, of the air conditioning ducts going through offices that weren't going to be there anymore, so it's much more complicated, and yet when I put myself in the district court's shoes as a former trial court judge, and you better believe that that's where Judge Black is coming from, he can't make up the evidence. So he's got this one lump sum figure and clearly struggling with it. That's why I'm trying to figure out what you think your client's burden was. Was the judge really obligated to accept this even if he thought it was unreasonable? The judge could determine whether the cost of doing that work was . . . because first in phase one, the district court established the standard for proving what needed to be done under Section 1601. Right, right, right. So then the judge could consider, are those costs the right costs to do the work required by 1601? Right, and we get that. Yes. And what I'm inferring is that he thought it wasn't a reasonable cost because he said no prudent landlord would undertake that. I may be misreading that. Do you have an alternate explanation? I think that was a misapplication of the economic waste doctrine. Even though you know that the judge said Ross doesn't get the benefit of the economic waste doctrine. Correct. And the problem here is he thought that your client hadn't met its initial burden of proof. If we decide that this is indecipherable as to items on my list, it's 8, 9, and 10, but that won't be for you, but freight elevator plumbing and air conditioning, should we remand for clarification of those items? No, footnote 4 came out of nowhere. It was not something that was clear from his record about where this applied. I think that the record in his findings show that Macarios did meet its burden of establishing cost of repair. Except as to those three items, I mean the problem I'm having is that it seems to be an inconsistent application of the court's reasoning to grant as damages the cost of some of the repairs, but not the other, and then put the blame on the landlord for not showing some were reasonable and some were not. Correct. That's the way we see it, too. But it's not. But you keep saying that you think he misapplied the economic waste doctrine, and I think I He says he didn't apply the economic waste doctrine, as in Ross is not entitled for the benefit of it. But then it seems that he did when he ruled that Ross didn't have to repair the freight elevator, the air conditioning, and the plumbing. So to go back to Judge Christian's question, why shouldn't we send this back to the district court and say, you've got to explain this better or reconsider with regard to those three items? This case has been pending for a long time. Well, but the buildings still stand, you know, the flag still waves. I think that it is clear from the articulation in his opinion about what he was doing and where he tied that prudent language. He tied it to Montara, and that is incorrect. All right, so you're still not answering the question. Should we remand for clarification on that? We get that it's been pending a long time. Our mission is to help people resolve the dispute. Of course, I am tempted to ask whether you've considered mediation of these remaining problems. You've certainly put the district court through its paces. We'd like to help you to get there, but if you don't want us to remand on these three issues, you're going to have to help me out with what you think ought to happen here. We want the right answer. So, I mean, if we need to remand to consider this issue because it's unclear from the district court's point of view. Have you tried mediation? Yes. Yes. Exhaustively? We've been ordered to. We've tried it. Okay. But you haven't tried it with the benefit of comments today, have you? No, we haven't. Not yet. Are there other points? You still have nine minutes left. Are there other points that you want to cover in your outline? I think the biggest issue, and it's short on this concept of what the evidence was in the record to establish economic waste, is that, as the district court said, highest and best use of the building does not mean that those repairs would have added no value. But what Ross never put forth was any evidence of the value of the building had it been put in the condition required by the lease. So, after the lease, sales of the building as is are a good metric for what was the value of the building in the condition Ross left it. We have nothing in the record showing what the value of the building was in the condition  But it's not that Ross didn't have any evidence. The district court said that an appraisal would have been better, certainly. But Ross had Mr. Anderson testifying that some of these would be windfall. And the district court wasn't persuaded by that. But it's not the case that there was a vacuum like there was in Montara. The district court on page 39 of the Finances Act and Conclusions Law in Phase 2 said that Ross's evidence were conclusory assertions that the repairs would offer no value. That's another way of saying yes. The district court wasn't persuaded by that evidence. But it's not quite like Montara where there was a void of evidence. They have their theory. And, you know, given the fact pattern of this case, I can understand why they ran the defense. You know, hindsight is 20-20. But the lease ended in September of 2016. And Ross had the benefit of fast-forwarding to what's actually happened. That's not what the district court thought he could look at for end-of-lease obligations, right? He thought he needed to look at September of 2016. And that's a correct application of the law. We measure damages based on the date of breach. Are there other points you'd like to make? Just because counsel raised it, the jury trial issue, if there's a contractual jury waiver, the Seventh Amendment and the federal rules do not revive a right that has been waived. So if, and there's the Seventh Amendment. So is that Fifth Amendment case Rishal? Is that the strongest case you've got on that point? Rishal is the case that talks about the limits of 38 and 39 under the federal rules. There's multiple cases in the Ninth Circuit that say that a pre-suit contractual waiver is enforceable and a Seventh Amendment does not revive some right to a jury trial. Well, the problem in Rishal, though, is that there is no statutory entitlement to a jury in an admiralty case. And once that case was re-characterized as sounding an admiralty rather than a general civil case, then clearly the law does not permit a jury. So if the seaman revokes his jury demand, then the, in this case, I guess the shipyard, is not entitled to a jury under the law. The problem here is that, as opposing counsel points out, the language in the lease kind of seems one-sided in referring only to a waiver of a jury if your client initiates the litigation. It doesn't really address the question of what happens if Ross initiates the litigation and then you counterclaim. Well, it is clear, it's unequivocal, that it applies to judicial proceedings instituted by the landlord. The counterclaims in Phase 2 were judicial proceedings instituted by the landlord. They were not instituted by Ross. The only issues being tried in Phase 2 were McCarty's counterclaims.  There is no obligation to make it two-sided, like an attorney fee clause. It is an enforceable contractual jury waiver. And Rishal is not limited to admiralty because what Rishal just did was said, when we look at 38 and 39, again, they don't create a right to a jury trial that isn't there. And also, the federal statutes make clear that the federal rules cannot create new rights that don't exist. So they can preserve a right to a jury trial, but they can't create it when Ross waived it through the lease. Neither the Seventh Amendment nor the federal rules can do that. So the question is, is the waiver enforceable? And it is. It's unequivocally a jury trial waiver for the Phase 2 proceedings. Can you address the interest question? Yes. So the first answer is that the issue wasn't preserved for appeal. It was raised for the first time. Ross's arguments were raised for the first time in a response to McCarty's motion for attorney fees, which is still pending, has not been decided on by the district court. And that was after the notice of appeal had been filed, right? Correct. And then the second issue is that it actually does accord with Oregon law about whether damages are readily ascertainable. The question is, are there reasonable market standards that can be applied to establish damages? And in here, cost of repair was entirely based on reasonable market costs for what these costs would be to do the work. So the damages were readily ascertainable. The interest rate in the lease does not apply. It's limited to different situations, and so the 9% statutory rate applies here. Again, I think, you know, our point on economic waste doctrine is that the evidence put forward by Ross and their theory of the case relied entirely on things that were happening at the end of the lease. They never considered what the value would have brought had they just done the work required by the lease. That evidence was not in the record. Montara, you know, the narrowest holding of Montara is that the court upheld a jury verdict awarding cost of repair damages when there was no evidence in the record concerning diminution in value. Cost of repair is the correct rule under Oregon law. Economic waste doctrine applies to leases and to these types of doctrines. And again, on our first issue on appeal, or second issue on appeal, I should say, economic waste is a narrow doctrine. It is not intended to rewrite a party's contract and write out the terms of the party's contract. It is intended to protect the party who substantially performs the contract and has only minor technical, nonsubstantial, or immaterial deviations from the contracted for work. So we don't excuse a party and say, you can accept the benefits and receive all the benefits under your contract and not perform because you're going to make an argument that that contracted for benefit for the other side has no market value. That would just defeat the purpose of contracting. Well, and I suppose you would also point to the fact that the rent of $30,000 a year never changed over, what, the 50-year period of the lease? Absolutely. And there's a number of— But he would enter into that kind of a contract is beyond me. Well, there's a number of cases that Ross cites that are distinguishable because there wasn't consideration, because it wasn't material purpose of the contract. Here, the district court expressly found that these end-of-lease obligations were material breaches. The breach of those obligations were material because the tenant had the benefit of the space, paid $34,000 a year for it for 20 years, this tenant did, and in exchange had to do specific end-of-lease work and just refused to do it. One thing I wanted to touch on was the implied consent issue with the basement, Mercario's first issue on appeal. All of Mercario's positions require enforcing the terms of the party's contract, enforcing what was in the contract. And here, the implied consent cases that the court relied on did not have these types of provisions that this lease has. But your client renewed the lease. I mean, that would have been the time where the landlord should have said, we will only renew this lease if you reopen the basement. And they didn't do that. Your client didn't do that. So the end-of-lease obligations, which is where the requirement to restore the basement comes from, cannot be waived through a renewal of the lease because those end-of-lease obligations continue. They just get carried forward. He found that you earlier impliedly consented, so what about that? At that point in time. Because the lease has three provisions that that decision essentially writes out of the lease. One is that that type of alteration required prior written consent. So after the fact, implied consent. You can't rely on alteration, right, because the statute of limitations has run on that provision. But the statute of limitations has not run on 16-01, which requires the tenant to restore unconsented-to alterations at the end-of-lease. Except that he found that you impliedly consented earlier. That's your problem, right? And there is no way that you could impliedly consent when the lease requires prior written consent that any waiver be in writing and that the landlord's failure to assert rights under the lease does not constitute a waiver. But if the basement was closed at the time that the lease was renewed, then where is the obligation to restore it? If we go back in time to the date of the renewal, then there wouldn't be anything to restore because it was already closed at that point. The restoration is to restore occupancy to the basement. So they needed to fix and make sure that the building had the ability to have a certain number of occupants and use that basement space for what it was used when the lease was originally entered into. And that's just having a certain number of people. It's, again, not turning it into a 1950s department store. It's just allowing there to be 195 people on that floor. Well, and the interim need to update because of the seismic repair. For what it's worth, I mean, you're out of time, but for what it's worth, I think you're treating waiver as an equivalent to implied consent. I think you're using those terms interchangeably. District court did not. Correct. And we've briefed the issue on implied consent. Thank you. Thank you so much for your argument. Counsel, it's very helpful. We'd like to hear from opposing counsel, please. Like two minutes or five minutes or two minutes? Two minutes. We actually didn't have any time left, sir, but we put two minutes on the clock. Okay. Let me just touch a couple of points. First of all, there was plenty of evidence that a prudent landlord would not undertake the particular repairs that were identified. Mr. Close, Mr. Anderson, Mr. Calamaris himself testified that in order to decide to do something, he would do a calculation about what the value would be, and he had not done that. So there's plenty of evidence in the record with respect to that. On the jury waiver point, let me just make it clear that 1304 is a waiver of tenants' right to a jury with respect to landlord. And, therefore, it doesn't impact the application of 38 and 39 because that's based on the landlords. The final point I want to make, which I perceive that the court is not agreeing with us on issue preclusion, is just that if you go— Because it was a Fed action, right? It wasn't—you weren't challenging or litigating obligations for termination of the lease. Yeah, but here's the point, Your Honor, is that what the court in the Fed action determined is that Ross had complied with— or the condition that the building was in in the summer of 2015 was in compliance with its obligations for repair under the lease. That's what it decided. Okay, so here's the critical point. If you go back and you look at the way the court characterized and also Macarius characterized the obligation under 1601, and it's found on page 11 of their initial brief, they say, Ross must return the building in as good a condition as it would have been but for a tenant's failure to perform maintenance reasonably required by the lease. Well, in the Fed action, the court determined that Ross had undertaken what was required by the lease as of the summer of 2015. We understand. Okay. Thank you very much. Let me ask you this, though. Please continue. We understand that point. I'm sorry, though, but we don't get such complicated cases like this in Brooklyn. But is there some value to give mediation a try again? I mean, you want to get closure. If the case is going to be remanded, it's going to go on and on. There's going to be a lot of expenditure of additional counsel fees in the course of litigation. And, you know, do you think that maybe the provident thing here might be to give it a good old college try again? We're certainly happy to. And we spent several sessions with Mr. English, a well-known mediator in this area. I'm sure my client would be prepared to do that again. Yeah, because you have the benefit of the wisdom of some of my colleagues now. Maybe it might be of some value to try it again. Well, maybe you can possibly let us know about that. We don't want to do it if it's not going to really be productive. Yeah, happy to do that. Thank you both. Thank you. Thank you. Your arguments are very helpful. We'll go ahead and take this case under advisement and stand on recess for the day. All rise. The court for this session stands adjourned.
judges: TALLMAN, CHRISTEN, Block